The defendant was indicted, under section 1017 of the Code, in one count, for unlawfully lending, and in the other for unlawfully failing to account for, money belonging to the Love and Union Society, an unincorporated body or association of individuals. The members paid an initiation fee and monthly dues, and in this way the necessary funds were raised for the uses of the society, which was formed "for extending aid to sick members and their families and to defray the expenses of *Page 481 
burying their dead." The defendant was a member of the society, and was elected treasurer. In his official capacity he received the funds of the society, and when demand was made by the proper authority upon him to account and pay over the money to his successor he refused to pay the money, though he presented a statement of the amount in his hands, and this appears to have been correct and to have been satisfactory to the trustees.
We deem it necessary to consider only one or two of the questions involved in the case in order to dispose of this appeal.
The defendant's counsel requested the court to charge the jury that the Love and Union Society is not such a (665) benevolent institution or organization as is described in section 1017 of the Code, and that they should therefore acquit the defendant. The court refused to give his instruction, but charged the jury that if they believed the testimony beyond a reasonable doubt, it is established that the Love and Union Society is a society or congregation within the meaning of that section of the Code; that the words "benevolent" and "religious" are adjectives, qualifying the word "institution," but not the words "society or congregation." The court further charged that if the jury believed the testimony beyond a reasonable doubt, the defendant, as treasurer of the society, had failed to account for and pay over the said money to the proper officers, and, therefore, that he is guilty under the second count. The defendant excepted to the refusal to give the instruction, and also to the charge. The jury convicted the defendant, and from the judgment upon the verdict he appealed.
In this construction of the statute we cannot concur. The society was organized for the mutual benefit and advantage of its members, and was not "benevolent" within the ordinary meaning and acceptation of that word. Webster defines "benevolent" to mean, "Having a disposition to do good; possessing or manifesting love to mankind and a desire to promote their prosperity and happiness; disposed to give to good objects; kind; charitable." Substantially the same definition is given in the other standard dictionaries. Black, in his Law Dictionary, defines benevolence as the doing a kind or helpful action towards another, under no obligation except an ethical one. He says it will include all gifts prompted by good will or kind feeling towards the recipient, whether an object of charity or not. A benevolent society, of course, is one organized for benevolent purposes. He defines a benefit society as one (666) which receives periodical payments from its members and holds them as a fund to be loaned or given to those of the members *Page 482 
needing pecuniary relief. "The essential difference between a benevolent association and a beneficial society, in the strict use of those terms, is that the former has for its object the conferring of benefits without requiring an equivalent from the one benefited, and in that sense it may be a charity." 3 Am. Eng. Ency. (2 Ed.), p. 1043. In Attorney-General v. Critchett, 37 Minn. 13, an association was organized as a "benevolent" one, under a special statute, for the purpose of endowing the wife of each member on his marriage with a sum equal to as many dollars as there were members. The Court, in passing upon the validity of its incorporation, said: "It is clear, from the plan of the association, that it was not intended to bestow any benefit or help without what was thought to be an equivalent," and the Court therefore held that it could not be a "benevolent society," within the ordinary or legal meaning of those words. And so, in another case, in which the association was in all essential respects like the one described in this case, the same Court said that "The undertaking is not in any sense benevolent, but is for a quid pro quo; it is paid for. It is no more a benevolent
society than any mutual insurance company or other mutual company, or any partnership of which one member undertakes to do something for the pecuniary advantage of another member in consideration of the undertaking of the latter to do a like thing for him." Foster v.Moulton, 35 Minn. 458; Beam Benev. Soc., sec. 44. The law upon the subject is clearly stated in Gorman v. Russell, 14 Cal. 531. In that case it appeared that certain persons of a particular avocation associated and agreed that each should contribute a certain fixed sum to the common treasury, which sum, consisting of initiation fees and dues, was to be applied, in certain events, as in (667) sickness, etc., to the relief of the necessities or wants of the individual members or of their families. The Court held that it was not a benevolent society, not a charity, any more than an assurance or benefit society is a charity, and that it was simply a fair and reciprocal contract among the members to pay certain amounts under certain contingencies to each other out of a common fund.
It is perfectly clear in our case that the members of the society united for the purpose of mutual benefit and advantage, and not merely from motives of charity, or with the desire or the design merely of doing good to others, which would seem to be the very essence of benevolence. The object of their organization was a most commendable one, but, though it was laudable in its purpose, it was not for that reason benevolent. The statute (Code, sec. 1017), being a penal one, must be construed strictly. We are of the opinion, therefore, that the court erred in refusing to *Page 483 
give the instruction prayed for by the defendant, and in the instruction given to the jury to the effect that the Love and Union Society was a benevolent society, within the meaning of section 1017 of the Code.
We think there was also error in the instruction that the adjectives "benevolent" and "religious" do not qualify the words "society and congregation." The general arrangement of the section and of those particular words with respect to each other, and the punctuation, clearly indicate that the purpose was to protect only benevolent or religious institutions and benevolent or religious societies or congregations, and it was not intended that the section should apply to any society, regardless of its being either of a benevolent or religious character. We observe that the word "congregation" is used in the indictment in describing the society. The evidence does not disclose why this word was so used. It may be that it is a religious society or congregation in fact, though (668) the proof does not show it to be such. If it is, then, of course, the case would come within the provisions of that section of the Code, but it may be necessary in that event to send another bill, so that the allegations can be made to correspond with the facts as they will be shown at the next trial.
If the defendant is not indictable under section 1017, it may be that he is amenable to the law under section 1014. We do not think that the words "fail to account," as used in section 1017, refer to any failure to pay upon demand what is in the hands of the fiduciary, but only require that he shall render an account or statement of the funds, and, too, an itemized account, if required, in order that it may be known what disposition he has made of the funds entrusted to him. An account is defined to be "a statement in writing of debts and credits, or of receipts and payments; a list of items of debts and credits, with their respective dates." Black's Dictionary, p. 17. In our statutes the word is used in this sense, and when not only an account, but payment or settlement, is intended, additional words are used to express that idea. Code, secs. 724, 764, 1399 to 1402, 1617, 1618, 1865, 1868. In this case the defendant seems to have rendered what was accepted by the prosecutors as a satisfactory account, but the court charged that if he failed to pay on demand he had not complied with the requirement of the law. We do not think this is so. A failure to pay or settle on demand would be an unlawful conversion, and, if done with a dishonest, corrupt or fraudulent intent, would be embezzlement, which particular offense is indictable and punishable under section 1014. It is for this reason that we have suggested that the defendant may be indictable *Page 484 
under the latter section. If so, there must be a separate bill, as counts under each of the sections (1014 and 1017) cannot be united in the same bill. S. v. Watts, 82 N.C. 656. The fact that the defendant is a member of the society may seem (669) to present an obstacle in the way of his successful prosecution under section 1014, but it seems to be settled by the authorities that where a member of an unincorporated society receives money of the society, not in his capacity merely as a member, but in trust or as a fiduciary, he will be criminally liable for any embezzlement of the money so held by him. Having acquired it by virtue of the confidence reposed in him, any fraudulent conversion of it is indictable, although, as a member of the society, he may be one of the joint owners of the money, and his conversion of it is indictable, although, as a member of the society, he may be one of the joint owners of the money, and his conversion of it, therefore, would not, at common law, have been criminal. McLain Crim. Law, sec. 631; Reg. v. Woolley, 4 Cox C. L. C., 251, 255; Reg. v.Turberville, ib., 13; Rex v. Hall, 2 Eng. Cr. Cases, 474;Reg. v. Proud, L. C., 97; Reg. v. Murphy, 4 Cox Cr. L. Cases, 101. In Reg. v. Woolley, supra (p. 251), the defendant was indicted for embezzling funds, the property of E. M. B. and others, his partners (members of Friendly Society), and pleaded that he could not be convicted because he was a member of the society. The Court said: "Even assuming that the prisoner, being himself one of the members, was included in the word `others,' that point was taken in a case before Mr. Justice Erle, at the last Monmouth Assizes (Rex v. Tuberville, supra), and that learned judge ruled that he should consider the prisoner included or excluded in the word `others,' as the justice of the case might require." The same principle is laid down in Laycock v. State, 136 Ind. 217, in which the Court says: "The fund in question was set apart and devoted to charitable and benevolent purposes. The appellant was made the trusted agent of the association, charged with the duty of preserving its funds for the use of the needy and distressed brothers of the order; and an answer by him to a charge of fraudulent conversion that he had an equal interest with the others therein, and no one had a right to complain because there was no principal entitled to its recovery, (670) does not find support under existing statutes. This money having been dedicated to the wants of the sick and helpless, the trustee had no right to profane or violate a sacred trust in the manner charged, and for such he is answerable. The act of embezzlement may be perpetrated as well against the property of an association as of a corporation." We see, therefore, that the technical rule of the common law that in general a party having a right of property in goods, and also a right to the possession, cannot be guilty of *Page 485 
larceny, and consequently that tenants in common, joint tenants and partners cannot be guilty of stealing their own property (Roscoe Cr. Ev., p. 626), seems not to apply to a case of embezzlement by one who has received the property in trust and confidence to apply it to certain specific uses. We merely call attention to this principle for the purpose of showing the difference between section 1014 and section 1017 of the Code, the latter referring only to the unlawful lending of money or failing to "account" for the same when received in trust for a benevolent or religious institution, society or congregation, and the former to the fraudulent conversion of the same (evidenced by the failure to pay over on demand) when received in trust for any corporation, person (or persons, by the Code, sec. 3765, subsec. 1) or copartnership.
Whether the prosecution can be successfully maintained under the present indictment, and whether it is advisable to send a bill under section 1014, are matters which we leave entirely to the consideration of the learned and able solicitor who prosecutes in behalf of the State in the district from which the case has come to this Court.
We only decide now that there was error in the rulings of the court as above indicated, and because thereof there must be another trial.
New trial.
Cited: S. c., 138 N.C. 673.
(671)