SOUTHERN ASSEMBLY v. W. A. PALMER, SHERIFF, ETC.

(Filed 30 May, 1914.)

1. Constitutional Law — Corporations — Municipal Corporations — Taxation—Exemptions—Religious Corporations—Business Purposes.

A municipal corporation is one designed to create within a prescribed territory a local government of the people therein, as a part of that exercised by the State, with certain and defined restrictions, and our State Constitution, Art. V, sec. 5, exempting

municipal corporations from taxation, does not include within
its meaning or intent a corporation composed of shareholders
which in its form and controlling features is a business enter-
prise upon which municipal powers have been incidentally con-
ferred in promotion of its primary purpose; and in this case it
is held that the property of the Southern Assembly, chartered
by special legislative act to establish a municipality for the
benefit of the Methodist Episcopal Church, for the purposes of
assemblies, conventions, public worship, and the like, may not
be exempted from taxation, under our Constitution, it appearing
that the ultimate control is in a body of stockholders and that
the management shall be in commissioners elected by such stock-
holders, and that certain business enterprises may be carried
on in furtherance of the general scheme.

2. **Taxation—Special Exemptions—Repeal—Statutes, Interpretation
of—Religious Corporations.**

The Southern Assembly was created a municipality for cer-
tain church work of the Methodist Episcopal Church by chapter
419, Laws 1909, with the primary purpose of engaging in certain
business enterprises, and section 9 of the act exempted its prop-
erty from taxation in express terms. *Held*, this special exemp-
tion was repealed by chapter 46, Public Laws 1911, construed in
connection with the machinery act of 1911, ch. 50, sec. 71 (*Davis
v. Salisbury*, 161 N. C., cited and applied). The revenue and
machinery acts of 1913 should receive the same interpretation.

APPEAL by plaintiff from *Ferguson, J.,* from HAYWOOD, at
chambers, 1 September, 1913.

Civil action, heard on return to preliminary restraining order.

The action was instituted to enjoin the defendant, the sheriff
and tax collector of Haywood County, from collecting the tax
assessed against plaintiff and appearing on the regular tax lists
of the county of Haywood for the fiscal year 1911-1912, to the
amount of $156.53, and which defendant was proceeding to col-
lect by levy and sale.

Plaintiff alleged and claimed that plaintiff's property, situate
in Haywood County, was exempt by Article V, section 5, of the
Constitution of the State, and by chapter 419, Laws 1909, incor-
porating plaintiff, particularly section 9 of said act, which in
express terms exempts plaintiff from taxation.

On the hearing, the restraining order was dissolved, and plaintiff excepted and appealed.

*Alley & Gilmer for plaintiffs.*
*Ferguson & Silver for defendants.*

HOKE, J.   On the hearing it was properly made to appear that, in 1909, the General Assembly of North Carolina incorporated plaintiff company (Laws 1909, ch. 419), the charter authorizing a capital stock of $250,000, in shares of $100 each, par value, raised to $500,000 by Laws 1911, ch. 394, and conferring on plaintiff all the powers granted to corporations by section 1128 of the Revisal, including the powers in subsection 4, "to hold, purchase, and convey real estate in or out of the State and to mortgage the same and its franchises," and in subsection 6, "to conduct business in this State, in other States, the District of Columbia, the territories, dependencies, and colonies of the United States, and in foreign countries, and have one or more offices in and out of this State," etc.

Among other provisions of this act of incorporation, it is provided in section 2: "That the purpose of said corporation is to establish and maintain, in Haywood County, North Carolina, a municipality of the Methodist Episcopal Church, South, assemblies, conventions, conferences, public worship, missionary and school work, orphan homes, manual trades, training and other operations auxiliary and incidental thereto; also a religious resort, with permanent and temporary dwellings for health, rest, recreation, Christian work and fellowship."

Section 3 grants powers to acquire and deal in real estate, install waterworks, sewerage, and the power to issue and secure bonds.

Section 4 grants the corporation power to license occupations.

Section 5, to establish cemeteries.

Section 6, that "the board of commissioners of the corporation may levy taxes for municipal purposes and levy privilege taxes."

Section 7: "The board of commissioners of the corporation may enact ordinances for the government of the municipality."

Section 8 deals with prohibition of liquors.

Section 9: "The property of said corporation shall be exempt from taxation: *Provided,* this section shall not be so construed as to exempt the poll tax of any resident or the property owned by any resident or lot holder in said corporation and taxable by law."

Section 10: That the said corporation shall have power to purchase, build, construct, operate, and maintain hotels, auditoriums, and such buildings as the said board of commissioners of the said corporation may deem advisable for the purposes of carrying on the business of the corporation.

Section 11: The total authorized capital stock of the said corporation shall be $250,000, divided into 2,500 shares of a par value of $100 each, and at least three-fourths of the capital stock of the said corporation shall be held by members of the Methodist Episcopal Church, South.

Section 12 provides that the corporate powers can be exercised only by a board of commissioners, to consist of not less than six nor more than nine members, and this board shall be elected by the stockholders, at their annual meeting, etc.; and subsequent sections confer upon the corporation well-nigh all the powers contained in chapter 73, Revisal 1905, relating to cities and towns, in an extended plat or boundary of land owned by plaintiff in and adjacent to the town of Waynesville, and withdrawing all the territory embraced in said corporation, and included in the corporation of Waynesville, from the jurisdiction and corporate limits of the town, etc.

That taxes, as stated, were duly assessed on the general property of the corporation situate within the county, to the amount of $156.53, for the fiscal year 1911, appearing upon the regular tax list for that year, and same were due and owing, provided said property was liable to taxation.

Upon these, the facts chiefly relevant, it is contended for plaintiff that its property is exempt from taxation:

1. Because it is a municipal corporation, and as such exempt from taxation by Article V, sec. 5, of the Constitution.

2. Because of the express exemption contained in section 9 of the charter.

But, in our opinion, neither position can be sustained. True, our Constitution provides, Article V, sec. 5: "That property belonging to the State or municipal corporations shall be exempt from taxation," and, further: "That the General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable, or religious purposes," and some further minor exemptions are then allowed, these last "not to exceed the sum of $300 in value. But if it be conceded that the Legislature could confer these extensive municipal powers on a corporation of this character, having its ultimate control not in the inhabitants of the locality, as such, but in a body of stockholders who may or may not be resident in the community or even in the State, we are well assured that the plaintiff is no such municipal corporation as is described and contemplated in this constitutional provision.

The term, as used in our Constitution, from the context and its primary significance, evidently refers to municipal corporations proper, as cities and towns, etc., and to those public *quasi* corporations, such as counties, townships, etc., in which the inhabitants of designated portions of the State's territory are incorporated for the purpose of exercising certain governmental powers for the public benefit. This may be for the benefit of the general public as for the State at large, and also for the public benefit of the particular locality, but it is as a governmental agency and when established as exclusively such, and for that reason, that this exemption is allowed, and it was never intended to embrace a corporation like the present plaintiff, which, however high its aim and purpose, is, in its form and controlling features, a business enterprise, and on which municipal powers have been incidentally conferred in promotion of the primary purpose.

This concept of a municipal corporation, as embodying the elements, (*a*) designated territory, (*b*) the inhabitants within the same, and (*c*) the existence of governmental powers conferred and to be exercised for the public benefit, both general and local, is recognized in many decisions here and elsewhere and in authoritative text-books treating of the subject. Dillon

on Municipal Corporations, Ed. 5, secs. 31 and 32; Smith's Modern Law Municipal Corporations, secs. 7 and 8; McQuillan on Municipal Corporations, secs. 116, 117, 118; also section 107, where, in notes 24 and 25, a great many decisions of our highest courts, defining these corporations, are given. Thus, in *Memphis Trust Co. v. Levee District,* 69 Ark., pp. 284-86, a municipality is defined as "a corporation created for governmental purposes and having, to a certain extent, local powers of legislation and self-government." In *Waller·v. Osborne,* 60 Fla., 52 to 70: "Municipalities are legal entities, established for local governmental purposes."

In *Langley v. Augusta,* 118 Ga., 594: "A municipal corporation is a governmental institution designed to create a local government over a limited territory," and, in Note 25, *Lexington v. Thomas,* 113 Ky., 540: "A municipality is a State agency for governmental purposes, etc.," and like definitions appear in our decisions, as in *Jones v. Comrs.,* 137 N. C., pp. 579-596; *Mills v. Williams,* 33 N. C., 561.

Speaking to the principle, in *The Hartford Bridge case,* 51 U. S., pp. 511-523, a citation appearing in the learned and well considered brief of counsel for appellee, *Associate Justice Woodbury,* delivering the opinion, said: "Municipal bodies are incorporated for public and not private purposes. They are allowed to hold privileges of property only for public purposes. The members are not shareholders in any corporate estate which they can sell or devise otherwise," etc.

So far as the precise question presented in this appeal is concerned, we regard the principle as settled in this jurisdiction and adversely to plaintiff by the recent decision of *Comrs. v. Webb,* 160 N. C., 594, to the effect that the bonds of a drainage district could not be exempt from taxation on the ground that such a district was not endowed with governmental powers for the public benefit, but was more in the nature of a private business enterprise. And, on the second position, that plaintiff's property was expressly exempt by the provisions of the charter, granted in 1909, we have held, in *Davis v. Salisbury,* 161 N. C.,

56, that this and all other previous special exemptions were re-pealed by the revenue act, chapter 46, Public Laws of 1911.

Further construing this section in connection with the machinery act of 1911, ch. 50, sec. 71, in this same case, it was held, for reasons therein stated, that the revenue and machinery acts of the Legislature of that session should be construed together, and that the revenue act, ch. 46, sec. 5, was not designed or intended to establish or provide for any specified exemption, but was passed with a view of repealing all former exemptions and as a general declaration of the policy of the Legislature in carrying out the second clause, the permissive feature of our Constitution, Art. V, sec. 5, and that the property actually exempt was designated and provided for in chapter 50, section 71, the machinery act of the same Legislature.

Speaking to this position, in *Davis's case,* the Court, among other things, said: "In the present case, this section 5 of the revenue act, relied upon by plaintiffs, is not, in our opinion, designed or intended to establish or provide for any specific exemption. It was drawn more especially with the view of repealing former exemptions and as a general declaration of the policy of the Legislature in carrying out the permissive features of our Constitution, Art. V, sec. 5, in which the General Assembly is allowed, if it see proper, to exempt this kind of property from taxation, and, in our view, it does not establish any exemption; whereas the machinery act, sec. 7, is clearly drawn for the express purpose of establishing and defining the exemptions which shall be allowed, making minute regulations as to the different subjects and specific kinds of property which shall be exempt; and if there were conflict in these two statutes, as plaintiff contends, the latter, expressing the particular intent of the Legislature, should prevail. *School Comrs. v. Board of Aldermen,* 158 N. C., pp. 191-198, citing 1 Lewis Sutherland (2 Ed.), sec. 268; *Rodgers v. U. S.,* 185 U. S., 83, and other authorities."

It may be well to note that a like clause of repeal appears in the general revenue acts of 1913, ch. 201, sec. 5, and that the machinery act of that Legislature, substantially the same as that of 1911, should receive like interpretation.

In *Comrs. v. Webb, supra; Corporation Commission v. Construction Co.,* 160 N. C., 582; *United Brethren v. Comrs.,* 115 N. C., 489; *Loan Assn. v. Comrs.,* 115 N. C., 413, and other cases of like purport, it is shown to be the public policy of the State, as expressed both in the Constitution and statutes, that, except in certain specified and very restricted instances, the property of private persons, both individual and corporate, shall all bear its pro rata share of the general taxations imposed for the public benefit, and that, under the permissive clause of Article V, sec. 5, no exemptions should be made or upheld unless clearly coming within the constitutional provision and plainly so expressed as the legislative will. Accordingly, a careful perusal of section 71 of the revenue act of 1911, the law which, as we have seen, is controlling in the matter, will disclose that even in cases of property held for "educational, scientific, literary, charitable, and religious purposes," no exemption is permitted except in specified instances and where such property is *exclusively* devoted to these purposes, and that, on the facts as now presented, the statute in question affords no protection to plaintiff in the matter of taxation, either as to real or personal property.

There is no error in the record, and the judgment dissolving the restraining order is

Affirmed.