## Merrick Lodge No. 31, I. O. O. F. v. City of Lexington, et al.

(Decided April 27, 1917.)

### Appeal from Fayette Circuit Court.

1. **Taxation—Exemptions.**—The fundamental principle which makes taxation the rule and exemption the exception, requires that immunity from sharing the common burdens be granted only to those who assume duties which the state itself should discharge.

2. **Taxation—Exemptions—Statutes—Construction.**—All statutes exempting property from taxation are to be strictly construed, and it is necessary for the claimant of exemption from taxation to bring himself within the exact terms of the relieving law.

3. **Taxation—Exemptions—Charities.**—For property to be exempt as a purely public charity under section 170 of the Kentucky Constitution, the claimant must not only be a charitable institution, but its charities must be purely and wholly public charities.

4. **Taxation—Exemptions—Charities.**—A lodge of Odd Fellows which collects dues from its members and in return therefor provides for its members and their families, or the widows and orphans of those who are dead, and contributes portions of its income to a widows' and orphans' home, and to other charitable purposes upon a vote of its members, is a commendable private charity, but it is not a purely public charity within the meaning of section 170 of the Kentucky Constitution.

5. **Taxation—Exemptions—Charities.**—The business building of a lodge of Odd Fellows which collects dues from its members and pays benefits to them and their families, or the widows and orphans of those who are dead, is not exempt from taxation under

section 170 of the Kentucky Constitution, which exempts institutions of purely public charity.

KIMBALL & HUNTER, HUNT & BUSH and W. P. KIMBALL for appellant.

JAMES G. DENNY and J. EMBRY ALLEN for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This appeal presents the question of the liability of appellant's real estate to municipal taxation.

The appellant, Merrick Lodge No. 31 of the Independent Order of Odd Fellows, owns a lot situated at the northwest corner of Short and Limestone streets, in Lexington, on which there is a five-story structure, known as the Merrick Lodge Building. The fourth and fifth stories of the building are used by the appellant exclusively for lodge purposes; the other stories are rented as stores, offices and for residential purposes.

The building and ground were assessed for municipal taxes for the year 1915 at $35,000.00, the tax bill thereon being $612.50, due in two equal installments on the first days of January and July, respectively.

The lodge paid the first installment of $306.25; but, on April 2, 1915, it instituted this action to enjoin the city of Lexington, its treasurer and auditor, from selling the property for the unpaid portion of the tax. The petition alleges that Merrick Lodge is a charitable, benevolent and fraternal organization; that it is not conducted for gain or profit; that the income derived from said property, after the payment of the interest upon a mortgage debt of $17,500.00, is devoted wholly to charity; that none of the officers or members of the lodge receive any compensation for their services, except the secretary, who is paid an annual salary of $250.00 for collecting the dues from members, keeping the records, and attending to all correspondence; that the lodge paid out during the year 1914, $1,243.00 as sick benefits to its members, $530.00 for their burial expenses, besides various other donations to needy persons; that it also paid the Odd Fellows Widows' & Orphans' Home, the sum of $379.50 to assist in its maintenance and support, as is required by the laws of the order; that said Odd Fellows Widows' & Orphans' Home is a charity established and supported by the Odd Fellows of Kentucky, and that Merrick Lodge has, for

many years, provided a living for some of its old and injured members who otherwise would have become charges upon the public. For these reasons the plaintiff insisted that its building was exempt from taxation under section 170 of the constitution, which exempts "institutions of purely public charity."

The answer traversed the allegations of the petition, and alleged that Merrick Lodge is a fraternal society or association, organized and conducted for benevolence and for the mutual protection of its own members and their families; that it is in the nature of a mutual insurance company into which the members pay certain dues and assessments, and in consideration thereof are entitled to certain benefits in case of sickness, and they and their families are, under certain circumstances, entitled to other benefits; that the income of the lodge is derived principally from dues and assessments collected from its members, and the benefits and charities paid out and dispensed by said lodge are largely, if not entirely, paid out and dispensed to its own members and their families; that these benefits are paid in consideration of dues and assessments paid to the lodge by its members, and are wholly dependent upon the payment of dues and assessments by its members; that said lodge pays benefits and dispenses charity only to its own members who pay dues and assessments to the association, and who are in good standing, and to the families of such members under certain circumstances; and, that the payment of assessments and dues to the lodge is a condition precedent to the receipt of any benefits or charity therefrom.

The chancellor dismissed the petition, and the plaintiff appealed.

The proof shows that the plaintiff is a lodge having the usual characteristics of organizations of that kind, with about 341 members; that membership is conditioned upon good health; that the dues and assessments amount to $9.20 per year; that sick benefits are paid, ranging from $5.00 to $1.50 per week, all dependent upon membership; that donations can be made by the lodge to any purpose or person not a member of the lodge only with the consent of two-thirds of the members present at a regular meeting; that upon the death of a member of the lodge entitled to funeral expenses according to the by-laws, there shall be allowed $50.00,

and to the wife of a member $30.00 for funeral expenses; that the annual income of the lodge is between $9,500.00 and $10,000.00, of which about $2,600.00 is derived from dues, and over $6,000.00 from rents, and the balance chiefly from initiation and degree fees; that it annually pays out for sick benefits from $500.00 to $1,000.00; for burial expenses usually about $300.00, and from $350.00 to $400.00 to the Odd Fellows Widows' & Orphans' Home.

These annual payments aggregate about $1,800.00; the balance of the income is applied to the payment of interest and the principal of a mortgage debt upon the property, and perhaps in other ways which are not specified. From 1910 to 1914, the annual income from the building has ranged from $5,503.30 to $6,458.85.

Section 170, *supra,* exempts nine classes of property: (1) Public property used for public purposes; (2) places actually used for religious worship; (3) places for burial not held for private or corporate profit; (4) institutions of purely public charity; (5) educational institutions not used or employed for gain and the income of which is devoted solely to the cause of education; (6) public libraries, and their property exclusively used for their maintenance; (7) parsonages of religious societies, which are occupied by ministers; (8) household goods and other personal property of a person with a family, not exceeding $250.00 in value; and, (9) crops in the hands of the producer and grown in the year in which the assessment is made.

Where the exemption is conferred upon property rather than upon its owner, because its use and product is given over to charity, it is manifest that the character of the owner as a charitable society is immaterial.

But the fundamental principle which makes taxation the rule and exemption the exception, requires that immunity from sharing the common burdens be granted only to those who assume duties which the state itself should discharge. And, it being a general principle that all exempting statutes are to be strictly construed, it is necessary for the claimant of exemption from taxation to bring himself within the exact terms of the relieving law. When, therefore, the statute exempts only institutions of purely public charity, as section 170 of our constitution does, the claimant must not only be a char-

itable institution, but its charities must be purely and wholly public charities. City of Dayton v. Trustees of Speers Hospital, 165 Ky. 61.

Appellant rests its right to exemption upon the authority of Widows' & Orphans' Home of O. F. v. Commonwealth, 126 Ky. 386, 16 L. R. A. (N. S.) 829, where this court exempted from taxation a note for $4,000.00 owned by the Widows' & Orphans' Home of the Odd Fellows of Kentucky upon the ground that the home was an institution of purely public charity. That case, however, is radically different from the case at bar. There the exempted institution was a widows' and orphans' home, the sole purpose thereof being to provide a suitable home for the destitute widows and orphans of deceased Odd Fellows, thus bringing it squarely within the constitutional exemption applicable to "institutions of purely public charity." But, in the case at bar it clearly appears that Merrick Lodge is, in part at least, a mutual benefit or protective society; that it has strict rules governing its membership and the payment of dues by its members, as well as the payment of benefits to its members, and that these benefits are paid to the members in good standing as a matter of right and not as a charity; and, that members not in good standing are not entitled to any benefits. The income of the lodge is received from dues paid by members and from rents of its property, and is chiefly used in making payments to its members who are not destitute. And, it is not only expressly provided by section 1 of article 8 of the constitution of the lodge, that donations may be made with the consent of two-thirds of the members present at a regular meeting, but the proof shows that these donations are exceptions to the general rule and are small and infrequent. The donation to the Widows' & Orphans' Home amounts to something less than $400.00 per year, which is, comparatively, an insignificant proportion of its total income. In short, appellant's business organization is for the mutual protection of its members and the families of members in good standing; and, the benefits paid to them are paid as a matter of right and not as a matter of charity.

It will be noticed that the beneficiaries in the Widows' & Orphans' Home case, *supra*, paid no dues, and the charity which they received was in no way dependent upon the payment of dues as in the case of the Merrick

Lodge. This is the distinguishing feature between the two institutions.

The case before us is, however, quite like City of Newport v. Masonic Temple Association, 108 Ky. 333, 49 L. R. A. 252. In that case, the Masonic Temple Association owned a four-story brick building in the city of Newport; it rented out the first and second floors, and occupied the third and fourth floors for the purposes of its organization. It devoted its income derived from the rentals of its building and from the dues of its members to the relief of distressed and indigent members of the masonic order and their families. The court reviewed the cases at length; and, in holding that the association was not a purely public charity, and that its property was not exempt from taxation, the court said:

"But the constitution was intended to modify the exemptions theretofore allowed, and now only institutions of purely public charity are exempt. While this is a new provision in this state, it has long been in force in a number of other states. The purpose of its adoption in this state was to exclude from exemption all charities not purely public. The words 'purely public' need no definition. They do not include any restricted or private charities. These may be very valuable, and the spirit prompting them is much to be commended; but the exemption of property from taxation had assumed such proportions at the time of the adoption of our present constitution that it was seen fit not to exempt property from taxation unless devoted to a purely public charity.

"A Masonic lodge, which provides for its members and their families, or the widows and orphans of those who are dead, is a commendable private charity; but it is in no sense purely public. This question has often been presented to the courts, and, so far as we have seen, under provisions like ours, the decisions are uniform."

Again, in the same opinion, the court made its meaning clear in the following language:

"There are many commendable organizations owning a large amount of property, and doing often much work of benevolence, such as the Knights of Pythias, the Elks, the Odd Fellows, the Red Men, Sons of Temperance, and the like; but so long as they confine their beneficence to their own members, or their widows and

orphans, or are not designed for charitable purposes purely public, they can not be regarded as institutions of 'purely public charity,' within the meaning of our constitution. To so hold would be to give substantially no effect to the words 'purely public' in that instrument, and leave few, if any, private charities which would not be exempt from taxation. The section is framed so minutely that it is impossible to escape the conclusion that it was designed to narrow exemptions from taxation, and to limit them to the objects expressly named.''

Likewise, in Fitterer v. Crawford, 157 Mo. 51, 50 L. R. A. 191, it was held that a masonic lodge building was not used for purely charitable purposes where the first and second stories were rented, although the lodge was organized for charitable and benevolent purposes, and the rents received were applied, as here, to the payment of a debt and the current expenses of the lodge.

In the subsequent case of Commonwealth v. Y. M. C. A., 116 Ky. 711, 105 Am. St. Rep. 234, the court took occasion to speak of organizations having the characteristics of the appellant in this case, and in doing so, used the following language:

''They were held to have certain secret rites, ceremonies, and distinctions, which might be deemed to have a peculiar value. At least, they were intended to, and did, exclude all the public but themselves from their enjoyment. They owned their property, and used it exclusively for their own personal enjoyment and entertainment, as social club or other similar association might. Their charitable contributions were more in the nature of a mutual insurance or protection arrangement by which they insured themselves, or the dependent members of their families, against want in certain contingencies. Their charitable work, if any, outside of that bestowed on themselves and their own families, was incidental only, and not the objective purpose of the institutions.''

The late case of Vogt v. City of Louisville, 173 Ky. 119, is directly in point. In that case it was held that a building owned and used as a home and for the exclusive purposes of a commandery of Knights Templar, which was maintained by funds derived from fees and assessments of members of the commandery, and substantially the only charity the commandery dispensed was what it did not need to expend in maintaining its

home and furthering the fraternal spirit and aims of the order, could not be regarded as a purely public charity within the meaning of section 170 of the constitution, and was, therefore, not exempt from taxation.

After reviewing the authorities at length, and calling attention to the fact that a purely public charity within the meaning of section 170 of the constitution is such an institution as is maintained, without cost to the beneficiaries, either: (1) for eleemosynary purposes; (2) for educational purposes; (3) for religious purposes; or (4) for public purposes, the court said:

"It is manifest that neither De Molay Commandery nor its building or other property here claimed to be exempt from taxation can be classed as an institution of purely public charity in the meaning of any of the above definitions of such a charity, or in the meaning of section 170 of the constitution. On the contrary, like the building of the Masonic Lodge which, in City of Newport v. Masonic Temple Ass'n, *supra*, was held to be subject to taxation, its building is maintained solely as a home for the commandery, and substantially the only charity it dispenses is what it does not need to expend in maintaining its home."

From these authorities it is clear the judgment of the circuit court was right.

Affirmed.