SIR WALTER LODGE, No. 411, INDEPENDENT ORDER OF ODD FELLOWS, v. JOHN P. SWAIN et al.

(Filed 8 June, 1940.)

**1. Charities § 1—**

An organization empowered by its charter to hold real and personal property for commercial purposes provided the profits therefrom, if any, are used for the benefit of widows and orphans of deceased members or for such charitable and benevolent purposes as it may deem necessary or expedient, with further provision that its funds, property and income should not be divided in any manner among its members except as provided by law *is held* to hold the *corpus* of its property for business or commercial purposes.

**2. Taxation § 20—**

The Legislature in exempting property from taxation, Art. V, sec. 5, is required to observe the basic principle of equality, and exemptions allowed by it must be uniform within the class as required by Art. V, sec. 3, both before and after its amendment.

**3. Same—**

Taxation is the rule; exemption the exception.

**4. Same—Legislature may not exempt from taxation property held by charitable organization for commercial purposes.**

The power granted the Legislature to exempt property from taxation is limited by the language of Art. V, sec. 5, to property held for educational, scientific, charitable or religious purposes, the purpose for which the property is held and not the character of the corporation or association holding the property being the basis for the grant of permissive power to exempt, and the Legislature has no power to exempt property held by a religious or charitable corporation or organization for business or commercial purposes.

**5. Same—**

The provisions of the Revenue Acts exempting property from taxation must be considered in connection with Art. V, sec. 5, of the Constitution, since the General Assembly has no power to exempt property from taxation beyond the permissive power granted it by this section.

**6. Same—Property held by charitable organization for commercial purposes is not exempt from taxation.**

Plaintiff association was empowered by its charter *inter alia* to hold real estate provided the profits therefrom, if any, were used for the benefit of widows and orphans of deceased members or for such charitable and benevolent purposes as it deemed necessary or expedient to the successful prosecution of its charter provisions. During the years 1934 through 1939 it owned a building in which it maintained its lodge rooms and rented the remainder of the building for use as offices and stores on the basis of a commercial enterprise and used the entire rents therefrom for repairs and the payment of the mortgage indebtedness on the building. *Held:* Since the building is held for business or commercial purposes it is subject to the assessment of *ad valorem* taxes of the city and county in which it is situate for the years in question. Public Laws of 1933, chapter 204, section 304 (4-A) ; Public Laws of 1935, chapter 417, section 304 (4-A) ; Public Laws of 1937, chapter 291, section 600 (7) ; Public Laws of 1939, chapter 310, section 600 (7) ; Constitution of North Carolina, Art. V, sec. 5.

APPEAL by defendants from *Williams, J.,* at February Term, 1940, of WAKE.

Civil action to restrain tax sale and to have listing and assessment of plaintiff's property declared illegal and of no effect.

The plaintiff is a corporate entity chartered by the Secretary of State on 7 July, 1933, and owns a ten-story office building situate at the southeast corner of Hargett and Salisbury Streets in the city of Raleigh. The local taxing authorities, defendants herein, caused this property to be listed and taxes levied against it for the years 1934 to 1939, inclusive, which the plaintiff protests on the ground that it is not subject to taxation, or that it is exempt from an *ad valorem* assessment.

A jury trial was waived and the controversy submitted to the court for final determination, both as to the law and the facts, which, in summary, follow :

1. As set out in its charter, the plaintiff was incorporated to promote the common welfare of its members; to advance the cause of humanity;

to create greater interest in the cause of benevolence and charity; to promote friendly and social intercourse; to protect the widows and orphans of deceased members, and - to secure for themselves and their successors the blessings of friendship, love and truth.

2. The plaintiff was chartered with a membership of five. It now has a membership of forty-three. Each member is required to pay dues in the amount of $6.00 annually, and is entitled to sick and death benefits. Two-thirds of these dues goes to the Grand Lodge of the Order of Odd Fellows, and the remaining one-third is retained by the plaintiff for the expenses of its lodge.

3. The plaintiff is given authority to purchase, lease and otherwise acquire, hold, mortgage, convey and otherwise dispose of all kinds of property, both real and personal, provided the profits arising therefrom shall be used for the benefit of widows and orphans of deceased Odd Fellows in North Carolina, or for such charitable and benevolent purposes as may be deemed necessary or expedient for the successful prosecution of the objects and purposes for which the corporation is created.

4. It is set out in the by-laws of the plaintiff corporation that its funds, property and income "having been raised for the purpose of relieving sick and distressed brethren and for other charitable purposes in the Order are not to be divided in any manner among the members or used for any purposes except as provided by law."

5. The plaintiff acquired the ten-story office building described in the pleadings, on 28 May, 1934, by assignment from the highest bidder at commissioner's sale and agreed to assume the mortgage indebtedness of its predecessors in title, amounting to $315,000.00. Plaintiff owns no other property.

6. Thereafter, on 2 August, 1937, the plaintiff refinanced its indebtedness on the building executing a first mortgage in the sum of $215,000.00 and a second mortgage in the amount of $22,500.00. All rent, interest or income previously received was used exclusively in the payment of interest on its indebtedness, and since the refinancing, all rent, interest or income has been, and still is, used exclusively in the payment of principal and interest on the mortgage indebtedness. This indebtedness now amounts to approximately $212,000.00.

7. In 1936, the plaintiff remodeled its lodge rooms and converted a portion thereof into offices at a cost of approximately $12,500. This was done in order to increase its income from the property and to provide additional funds for payment on its indebtedness. The expenditure was made possible by the bondholders waiving interest accrued and payable on two interest payment dates, which amounted to $15,750.00.

8. Other repairs and improvements on the property have been made from time to time in order to render it self-supporting, which the court

finds were necessary for its preservation and to provide income for the liquidation of the bonded indebtedness.

9. The plaintiff maintains its lodge rooms on a part of the tenth floor of its building, and rents the remainder of the building for use as offices and stores on the same basis as other properties similarly situated, i.e., on the basis of a commercial enterprise.

10. The plaintiff has at no time made any payments, donations or contributions to any charitable purpose from the operation of its building.

Upon the foregoing determinations, the trial court concluded that the plaintiff is a nonprofit, benevolent and charitable corporation, and holds the property in question for the benefit of a charitable, benevolent and patriotic institution or order.

Whereupon, it was adjudged that the listing and assessment of taxes against the plaintiff's property for the years 1934 to 1939, inclusive, was invalid and contrary to law.

From this conclusion and adjudication, the defendants appeal, assigning errors.

*W. H. Yarborough, Jr., and Bunn & Arendell for plaintiff, appellee.
Jones & Brassfield for defendants, appellants.*

STACY, C. J. The question for decision is whether the ten-story office building situate at the southeast corner of Hargett and Salisbury Streets in the city of Raleigh and owned by the plaintiff is subject to an *ad valorem* assessment and taxation for the years 1934 to 1939. The record suggests an affirmative answer.

First. It is provided by the Revenue Act of 1933, ch. 204, sec. 304 (4-A), Public Laws 1933, that the following real property, and no other, shall be exempted from taxation: "Property belonging to or held for the benefit of . . . charitable . . . or benevolent institutions or orders, where the rent, interest or income from such investment shall be used exclusively for . . . charitable . . . or benevolent purposes, or (to pay) the interest upon the bonded indebtedness of said . . . charitable or benevolent institutions." This same provision was brought forward in the Revenue Act of 1935, ch. 417, sec. 304 (4-A), Public Laws 1935, and was therefore in force from 1933 through 1936.

It is the position of the plaintiff that for the years 1934 and 1935 its real property was not subject to an *ad valorem* assessment and taxation, under the revenue acts then in force, because the rent, interest or income from its investment was used exclusively to pay the interest on its bonded indebtedness.

Plaintiff concedes that for the year 1936 its position in this respect is somewhat imperiled by the fact that a part of its income for that year,

to wit, $12,500, was used in converting some of its lodge rooms into offices for rent. It is pointed out, however, that this was made possible by the bondholders waiving interest in the amount of $15,750.00, so that in the end, it is contended, the result was the same as paying interest on its bonded indebtedness. Hence, plaintiff says its property ought not to be taxed for the year 1936.

It is also found as a fact that other necessary repairs and improvements have been made from time to time and paid for out of the income derived from the building. What effect, if any, this would have upon the case is regarded as incidental in view of the matters hereafter to be considered.

It is provided by the Revenue Act of 1937, ch. 291, sec. 600 (7), Public Laws 1937, that the following real property, and no other, shall be exempted from taxation: "Property beneficially belonging to or held for the benefit of . . . charitable . . . benevolent, patriotic . . . institutions or orders, where the rent, interest or income from such investment shall be used exclusively for . . . charitable . . . or benevolent purposes, or to pay the principal or interest of the indebtedness of said institutions or orders." This same provision was brought forward in the Revenue Act of 1939, ch. 310, sec. 600 (7), Public Laws 1939, and was therefore in force from 1937 through 1939.

It is the position of the plaintiff that for the last three years—1937 to 1939, inclusive—its real property was not subject to an *ad valorem* assessment and taxation, under the revenue acts then in force, because the rent, interest or income from its investment was used exclusively to pay principal and interest on its indebtedness.

Whether the plaintiff is a charitable organization as respects the dues of its members may be put aside as inapplicable to the present controversy, for it is quite apparent from its charter provisions that the real estate holdings, which alone are here involved, stand upon a different footing. *Dakota Lodge of Odd Fellows v. Yankton County,* 56 S. D., 234, 228 N. W., 238. Indeed, the by-laws of the plaintiff corporation culminating with the provision that its funds, property and income "are not to be divided in any manner among the members or used for any purposes except as provided by law," would seem to indicate a beneficial organization for the mutual protection of its members and the widows and orphans of deceased members, with the benefits to be paid to them as a matter of right rather than as a matter of charity. *S. v. Dunn,* 134 N. C., 663, 46 S. E., 949; *Merrick Lodge v. Lexington,* 175 Ky., 275, 194 S. W., 92. The statute has reference to a charity in fact as distinguished from one in theory or promise. *People v. Rockford Lodge,* 348 Ill., 528, 181 N. E., 432.

However, without definite determination of the character of the plaintiff in this respect, and passing the question for the moment, it will be observed there is no limitation on the plaintiff's power to engage in commercial activities with all kinds of property, both real and personal, provided the profits arising therefrom, if any, are used for the benefit of widows and orphans of deceased Odd Fellows in North Carolina, or for such charitable and benevolent purposes as may be deemed necessary or expedient to the successful prosecution of its charter provisions. *Merrick Lodge v. Lexington, supra.* Its funds, property and income are not to be divided in any manner among its members, or used for any purposes, "except as provided by law." Thus it appears that the *corpus* of plaintiff's real estate is held for business or commercial purposes. *Latta v. Jenkins,* 200 N. C., 255, 156 S. E., 857; Annotations: 22 A. L. R., 907, and 83 A. L. R., 773. At no time has any of the rent or income derived from the operation of its building been devoted to a charitable purpose.

Second. The people of the State, speaking through the Constitution, have expressed their will on the subject as follows:

1. "Laws shall be passed taxing by a uniform rule . . . all real and personal property, according to its true value in money." Art. V, sec. 3. By amendment adopted at the general election in 1936, this was changed to read: "The power of taxation shall be exercised in a just and equitable manner. . . . Taxes on property shall be uniform as to each class of property taxed." Ch. 248, Public Laws 1935. Reference is made to the section before and after the amendment only because the time in question extends across the period of change, albeit the principle for which it is cited—uniformity within the class—remained the same. *Leonard v. Maxwell,* 216 N. C., 89, 3 S. E. (2d), 316.

2. "Property belonging to the State or to municipal corporations shall be exempt from taxation. The General Assembly may exempt . . . property held for educational, scientific, literary, charitable, or religious purposes," etc. Art. V, sec. 5.

In interpreting these provisions of the Constitution, it has been adjudged that the basic principle, as expressed therein, is equality, and that discrimination is to be eschewed. *Comrs. v. Webb,* 160 N. C., 594, 76 S. E., 552; *Warrenton v. Warren County,* 215 N. C., 342, 2 S. E. (2d), 463. Fair play is the main thesis of the Constitution. 26 R. C. L., 332. Taxation is the rule; exemption the exception. *Benson v. Johnston County,* 209 N. C., 751, 185 S. E., 6; *Loan Assn. v. Comrs.,* 115 N. C., 410, 20 S. E., 526; *Redmond v. Comrs.,* 106 N. C., 122, 10 S. E., 845.

The power to grant exemptions under authority of the second sentence in Art. V, sec. 5, which may be exercised in whole, or in part, or not at all, as the General Assembly shall elect, is limited to property held for one or more of the purposes therein designated. *Southern Assembly v. Palmer,* 166 N. C., 75, 82 S. E., 18; *United Brethren v. Comrs.,* 115

N. C., 489, 20 S. E., 626. Property held for any of these purposes is supposed to be withdrawn from the competitive field of commercial activity, and hence it was not thought violative of the rule of equality or uniformity, to permit its exemption from taxation while occupying this favored position. But when it is thrust into the business life of the community, it loses its sheltered place, regardless of the character of the owner, for it is then held for profit or gain. *Trustees v. Avery County,* 184 N. C., 469, 114 S. E., 696. The test to be applied in determining the validity of exemptions granted under this provision of the Constitution is the purpose for which the property is held. *Davis v. Salisbury,* 161 N. C., 56, 76 S. E., 687; *Corp. Com. v. Construction Co.,* 160 N. C., 582, 76 S. E., 640. Note, the language is not that the General Assembly may exempt property *held by* educational, scientific, literary, charitable, or religious institutions, but the grant is in respect of property *held for* one or more of the designated purposes. *Latta v. Jenkins, supra.* It is true that property held for one or more of these purposes is usually held by an institution of such like character, still it does not follow that an institution of a given kind necessarily holds all of its property for a kindred purpose, or for any of the purposes enumerated in this section of the Constitution. *Warrenton v. Warren County, supra.* It is not the character of the corporation or association owning the property which determines its status as respects the privilege of exemption, but the purpose for which it is held. *Grand Lodge, F. A. M., v. Taylor,* 146 Ark., 316, 226 S. W., 129. This is the plain meaning and intent of the Constitution. *Corp. Com. v. Construction Co., supra.*

The revenue acts, therefore, and the exemptions contained therein, must be read in the light of the constitutional grant under which they were enacted, and they should be interpreted accordingly. In this respect, the General Assembly is confined to the circumference of its powers. *Southern Assembly v. Palmer, supra.*

Conceding that the General Assembly may have placed a broader interpretation upon Art. V, sec. 5, of the Constitution than is warranted by its language, induced no doubt by *dicta* contained in some of our decisions, it does not follow that the pervading principle of the Constitution, which is equality, should *ergo* be abandoned, or that the discretionary power of exemption, contained therein, should be extended to property held and used for purposes other than those specifically mentioned. The grant is limited in its terms, and the power to exempt stops at the boundary of the grant.

On the record as presented, it would seem that, for the years in question, the plaintiff's office building is subject to an *ad valorem* assessment and taxation.

Reversed.